NATIONS LAW GROUP
Lara Erin Nations
Alaska Bar No. 1506043
2525 Blueberry Road, Suite 207
Anchorage, AK 99503
Telephone: (907) 770-0909
Fax: (907) 770-0902
E-Mail: lara@nationslawak.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JUAN ENRIQUE JASSO RODRÍGUEZ | Case No. _____ |
| *Plaintiff*, | |
| WILLIAM P. BARR, Attorney General of the United States; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; CHAD F. WOLF, Acting Secretary of the Department of Homeland Security; KENNETH T. CUCCINELLI, Acting Director of the United States Citizenship and Immigration Services; ANNE ARRIES CORSANO, Director USCIS Seattle District (41); STEVEN B. CORLEY, Field Office Director of the USCIS Anchorage Field Office | **COMPLAINT FOR DECLARATORY RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT 5 U.S.C. § 701 Et seq.** |
| *Defendants* | |

**COMES NOW**, Juan Enrique Jasso Rodríguez and, via the undersigned

counsel, requests relief from the Court based upon the following.

## I.     INTRODUCTION

1.     Plaintiff Juan Enrique Jasso Rodríguez ("Mr. Jasso") brings this action

to challenge the March 23, 2020 denial by the United States Citizenship and

1

Immigration Services ("USCIS" or "the Agency") of his I-485 application to adjust status to that of a Lawful Permanent Resident ("LPR") under section 245(a) of the Immigration and Nationality Act ("INA"). USCIS and others, (collectively the "AGENCY") acting on its behalf, denied Mr. Jasso's petition by improperly finding that he failed to present all evidentiary requirements for adjustment, in particular that of having been "inspected and admitted" as per INA §245(a). Thus, Mr. Jasso asks this court to find that the Agency decision violated the Administrative Procedure Act ("APA") since, amongst other failings, they did not follow applicable statutory and procedural requirements, acted in an arbitrary and capricious manner, and violated his right to procedural due process under the Fifth Amendment of the United States Constitution. Additionally, under the Declaratory Judgement Act, Mr. Jasso asks this court to declare the agency record shows that he was "inspected" for purposes of INA §245(a) upon entry to the United States when he was "waved through" by a Customs and Border Patrol agent in 2006. Lastly, Mr. Jasso requests that this court to order the Agency to rescind the March 23, 2020 decision denying his application for adjustment of status, reopen those proceedings, and adjudicate his application as an alien who has been "inspected" for purposes of section 245(a) of the INA.

## II.    PARTIES

2.    Plaintiff, JUAN ENRIQUE JASSO RODRIGUEZ, is a national and citizen of Mexico born on October 26, 1986. He last entered the United States on February 21, 2006 and has not departed the country since that date.

3.     Defendant, WILLIAM BARR, Attorney General of the United States, USCIS, is sued in his official capacity. As United States Attorney General with ultimate authority over the United States Department of Homeland Security ("DHS"), Mr. Bar has the authority to approve, deny, reopen, or perform any other action permitted by law or ordered by this court regarding the application filed by Mr. Jasso.

4.     Defendant, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES is a sub-division with the Department of Homeland Security ("DHS"), 6 U.S.C. § 271, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is responsible for actual adjudication of adjustment of status applications and is the agency which adjudicated the application filed by Mr. Jasso.

5.     Defendant, CHAD F. WOLF, Acting Secretary of Homeland Security is sued in his official capacity. As Acting Secretary of Homeland Security Mr. Wolf oversees USCIS, a subagency of DHS, and has the authority to approve, deny, reopen, or perform any other action permitted by law or ordered by this court regarding the application filed by Mr. Jasso.

6.     Defendant, KENNETH T. CUCCINELLI, Acting Director, U.S. Citizenship and Immigration Services, is sued in his official capacity. As Acting Director of USCIS, Mr. Cuccinelli oversees all USCIS District Offices in the United States and has the authority to approve, deny, reopen, or perform any other action permitted by law or ordered by this court regarding the application filed by Mr. Jasso.

3

7. Defendant, ANNE ARRIES CORSANO, Director of the Seattle District of United States Citizenship and Immigration Services, is sued in her official capacity. As Director for District 41 of USCIS, she has jurisdiction over the Anchorage, Alaska USCIS field office and has the authority to approve, deny, reopen, or perform any other action permitted by law or ordered by this court regarding the application filed by Mr. Jasso.

8. Defendant, STEVEN B. CORLEY, Acting Director of the Anchorage Field Office of U.S. Citizenship and Immigration Services, is being sued in his official capacity. In his position as Anchorage Field Office Director, Mr. Corley has the authority to approve, deny, reopen, or perform any other action permitted by law or ordered by this court regarding Mr. Jasso's application.

## III. JURISDICTION AND VENUE

**A. Jurisdiction**

9. Jurisdiction is proper under 28 U.S.C. § 1331. This action arises under the Fifth Amendment to the United States Constitution; the Immigration and Naturalization Act, 8 U.S.C. §§ 1101 et seq., and its implementing regulations, the Administrative Procedure Act, 5 U.S.C. § 701 et seq., and 28 U.S.C. § 2201(a), as this is a civil action seeking, in addition to other remedies, a declaratory judgment.

10. Jurisdiction is not precluded pursuant to 8 U.S.C. § 1252 because this action does not involve review of a discretionary action of the agency but rather arises from questions under the Constitution and law of the United States.

11. Jurisdiction is not precluded under "sovereign immunity." Pursuant to 5 U.S.C. § 702 of the APA, the United States has explicitly waived sovereign

4

immunity over the plaintiffs' claims since the relief sought is other than money damages.

**B. Venue**

12.     Venue in this judicial district is proper under 28 U.S.C. § 1391 because this is a civil action in which the agency are, respectively, an agency of the United States and officer(s) of the United States acting in their official capacity, 28 U.S.C. § 1391(e), the events giving rise to this action took place within this District in the geographical limits of the City of Anchorage, Alaska, 28 U.S.C. § 1391(b)(2), and Plaintiff resides in Anchorage, Alaska, 28 U.S.C. § 1391(c)(1).

## IV.     STANDING

13.     The APA affords a right of review to a person who is "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. The Agency's improper denial of Mr. Jasso's application for adjustment of status (I-485) has adversely affected his ability to obtain legal residence in the United States. Mr. Jasso thus falls within the APA's standing provisions.

## V.     FINALITY AND EXHAUSTION

**A. Finality**

14.     The March 23, 2020 constitutes final agency action under the APA because it the denial of relief or its equivalent.  U.S.C. §§ 551(13); 701(b)(2); 704.

**B. Exhaustion**

15.     No exhaustion of administrative remedies is required since no federal statute or regulation mandates an appeal to the agency of the decision. *Darby v. Cisneros*, 509 U.S. 137 (1993). Neither the INA nor implementing regulations at 8

5

C.F.R. § 103.3(a) require an administrative appeal of the denial. Further, the only avenue for Mr. Jasso is to file a motion to reopen or reconsider with the Agency, USCIS, and these motions are not requirements of administrative exhaustion. 8 U.S.C. § 1252(d)(1); *see also Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003).

## VI.     STATUTE OF LIMITATIONS

16.     This case is filed within the general six-year statute of limitations for civil actions brought against the United States under 28 U.S.C. § 2401(a). The decision impugned was issued March 23, 2020, well within the statutory period to bring forth the present action.

## VII.     LEGAL BACKGROUND

### A. Adjustment of Status

#### 1. *General Requirements*

17.     Adjustment of Status to lawful permanent resident (LPR) is the procedure by which an individual in the United States is permitted to reside and work legally in this country. INA § 245(a); 8 U.S.C. § 1255(a).

18.     Section 245(a) of the INA requires that, in order to adjust status to that of an LPR, an individual must have been "inspected, admitted or paroled," present an application to adjust status to permanent resident, have an immigrant visa available, and be otherwise admissible.  INA § 245(a); 8 U.S.C. § 1255(a).

### 2. *"Inspected and Admitted"*

19.     Relevant here is the requirement that the individual be "inspected and admitted" into the United States in order to adjust status to that of a permanent resident. INA § 245(a); 8 U.S.C. § 1255(a).

20.     "Admitted" and "admission" were statutorily defined to mean "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." INA § 101(a)(13)(A); 8 U.S.C. § 1101(a)(13)(A).

21.     "Inspection and admission" must be <u>procedurally</u> proper, rather than <u>substantively</u> valid. *Tamayo-Tamayo v. Holder*, 725 F.3d 950, 953 (9th Cir. 2013) ("Congress intended 'admission' to mean lawful entry only in the procedural sense.").

22.     An individual who has presented himself for questioning by an immigration officer and has not made a false claim to U.S. citizenship meets the <u>procedural</u> requirements of "inspection and admission." *Matter of Quilantan*, 25 I&N Dec. 285, 293 (BIA 2010).

23.     Where an individual has met the <u>procedural</u> requirements of "inspection and admission," he may adjust his status to that of a lawful permanent resident under INA § 245(a). *Matter of Quilantan*, 25 I&N Dec. 285, 293 (BIA 2010).

### 3. *Evidence for purposes of Eligibility Determination*

24.     USCIS form instructions are incorporated into and carry the same force as regulations. 8 C.F.R. § 103(2)(a)(i).

25.     Regulations and the Form I-485 instructions state eligibility for adjustment of status may be met by presenting primary evidence, secondary evidence or, in the absence of these previous two, affidavits from third parties attesting to the truth of the matter. 8 C.F.R. § 103(2)(b)(2)(i); USCIS Form I-485 Instructions at p. 9-10.

26.     For purposes of "admission," an absence of primary evidence creates a presumption that entry to the United States was undertaken without inspection. 8 C.F.R. § 103(2)(b)(2)(i); USCIS Form I-485 Instructions at p. 9-10.

27.     Where only secondary evidence is available, the regulations and Form I-485 instructions dictate "inspection and admission" may be proven, and the presumption of entry without inspections may be overcome, with use of such evidence. 8 C.F.R. § 103(2)(b)(2)(i); USCIS Form I-485 Instructions at p. 9-10.

28.     Where neither primary or nor secondary evidence of "inspection or admission" is available, regulations and USCIS Form I-485 instructions allow an applicant to meet his evidentiary burden by presenting separate written statements, signed under penalty of perjury under United States law, by the applicant or third parties with personal knowledge of the circumstances of "admission." 8 C.F.R. § 103(2)(b)(2)(i); Form I-485 Instructions at p. 9-10.

### 4.   *Opportunity to Respond to Derogatory Information*

29.     Where the record contains derogatory evidence unknown to the applicant, that applicant must be given an opportunity to respond to that evidence via the issuance of a Notice of Intent to Deny (NOID) or a Request for Further

Evidence (RFE), and the response must be included in the record of proceedings.  8

C.F.R. § 103(2)(b)(16)(i).

## VIII.  FACTUAL ALLEGATIONS

30.    Mr. Jasso has sworn before the Agency that he entered the United

States on February 21, 2006 as the passenger in a car that was waved through by a

Customs and Border Protection (CBP) agent at the San Luis border crossing

checkpoint in Yuma, Arizona. *See* Exhibit A.

31.    Mr. Jasso married a United States Citizen (USC), Yolanda Isabel

Cortez, in 2008. Ms. Cortez petitioned for Mr. Jasso as an immediate relative via

Form I-130. *See* Exhibit B.

32.    The Agency approved the I-130 petition on September 17, 2012, giving

Mr. Jasso an immigrant visa that is available immediately. *See* Exhibit B.

### 1.  *Mr. Jasso's First Application for Adjustment of Status*

33.    Mr. Jasso filed a first application for admission as a lawful permanent

resident, Form I-485 on February 27, 2012. *See* Exhibit E.

34.    In that application, he asserted that he was "inspected and admitted"

when he was "waved through" by a CBP agent at the San Luis, Arizona point of

entry (POE) near midnight of February 20, 2006. *See* Exhibit B.

35.    The Application included the following evidence in support of his

"admission."

a.  Affidavit by Mr. Jasso (Exhibit B)

b.  Polygraph Examination by Gillespie Polygraph (Exhibit C)

9

c. GAO report: *Land Border Ports of Entry: Vulnerabilities and Inefficiencies in the Inspections Process.* Government Accounting Office, 2003. (Exhibit D)

36. The Agency interviewed Mr. Jasso and his wife on September 17, 2012 at the Anchorage Field Office. *See* Exhibit E.

37. The Agency conducted a second interview on October 23, 2012 at the Anchorage Field Office. The Agency took a sworn statement from Mr. Jasso, memorialized in a "Record of Sworn Statement," and introduced it into the record of proceedings. *See* Exhibit F.

## 2. Denial of Mr. Jasso's First Application for Adjustment of Status

38. The Agency denied the first I-485 application on December 20, 2012. *See* Exhibit E.

39. In its December 2012 decision, the Agency states that Mr. Jasso's claim of "admission as a wave through" on February 21, 2006 is not credible based upon contradictions in his testimony, his affidavit and the "sworn statement" of October 23, 2012. Exhibit E.

40. The 2012 decision does not mention Mr. Jassos's polygraph examination or any other evidence submitted by Mr. Jasso in corroboration of his claim. *See* Exhibits C and D

41. In its December 2012 decision, the Agency states that Mr. Jasso's claim of inspection and admission "is not supported by any oral or written evidence that is relevant, probative or rises to the level of credible." The Agency makes no

10

mention of Mr. Jasso's two examinations by the Agency, his sworn statement – made under penalty of perjury and against interest – the polygraph examination presented with his application, or any other evidence submitted by Mr. Jasso in corroboration of his claim. *See* Exhibit E.

42.     In making the eligibility determination of the application, the Agency stated that Mr. Jasso did "not provide evidence proving you physically presented yourself for inspection or that you were a "passenger in a car' as claimed." *See* Exhibit E.

43.     The Agency referred to a call to the CBO "fraud officer" at the San Luis, Arizona POE and used the information in that call to discredit Mr. Jasso's credibility and claim of admission. *See* Exhibit E.

### 3.  Mr. Jasso's Second Application for Adjustment of Status

44.     On July 24, 2017, Mr. Jasso filed a second application for adjustment of status. *See* Exhibit G.

45.     On February 20, 2020, the Agency interviewed Mr. Jasso at the Anchorage Field Office for his second application for adjustment of status. *See* Exhibit G. Mr. Jasso was represented by counsel. The interview was conducted using the services of a Spanish-language interpreter. The interview began at 2:50 p.m. The Anchorage Field Office closes at 4:00 p.m.

46.     At the February 20, 2020, Mr. Jasso's counsel noted that commencing the interview at 2:50 p.m. would not give adequate time to conduct a full interview. The Adjudicating Officer responded that she would do only a cursory review of the I-

485 application because it was too late in the day, she had not had a chance to review the entire file, and there was not time to do a "whole Q & A."

47.    At that interview, the Agency's Adjudications Officer failed to elicit complete testimony from Mr. Jasso regarding the 2006 entry and limited herself to asking the pro forma questions on the I-485 form regarding said issue.

48.    During the February 20, 2020 interview, the Adjudications Officer denied counsel the opportunity to object to evidence or questions from the Agency.

49.    At the February 20, 2020 interview, the Adjudications Officer denied counsel the opportunity to examine or cross-examine any witnesses, including Mr. Jasso.

50.    The February 20, 2020 interview lasted approximately 60 minutes.

### 4.  *Denial of Mr. Jasso's Second Application for Adjustment of Status*

51.    On March 23, 2020, the Agency issued a decision denying Mr. Jasso's second application for adjustment of status. *See* Exhibit G.

52.    The Agency includes in its March 23, 2020 decision the 2012 decision by direct reference in the sections tiled "Procedural History" and "Statement of Facts and Analysis, including Ground(s) for Denial." *See* Exhibit G.

53.    In the March 23, 2020 decision, the Agency states that "an applicant who claims that he or she has been lawfully admitted must prove his claim as per INA §240(c)(2)(B)." *See* Exhibit G.

54.    In the March 23, 2020 decision, the Agency states that Mr. Jasso failed to submit all initial evidence required as per the form I-485 instructions, to wit no

evidence in support of his inspection and admission into the United States. *See* Exhibit G.

55.     The Agency further states in the March 23, 2020 decision that Mr. Jasso submitted some evidence but he did not sufficiently demonstrate he was *lawfully admitted* into the United States. *See* Exhibit G.

56.     In its March 23, 2020 decision, the Agency mischaracterizes its questions at the February 20, 2020 interview as to Mr. Jasso's last entry into the United States, describing the inquiry as asking Mr. Jasso "to provide a detailed account of how [he] entered into the United States." *See* Exhibit G. The Adjudications Officer asked only the questions listed on the I-485 application as to the last entry and denied Mr. Jasso and his counsel the opportunity to elaborate or give a detailed explanation as to his last entry. The questions asked do not require further elaboration than a yes or no, and if it does the answer occupies no more than one or two words.

57.     In its March 23, 2020 decision, the Agency again mischaracterizes the nature of the February 20, 2020 interview, stating that in response to the Adjudications Officer's request for a "detailed account" of his last entry into the United States, Mr. Jasso "gave vague statements and when asked by the officer to provide more details, you continued the interview giving generic statements." In fact, the Adjudications Officer did not give Mr. Jasso the opportunity to elaborate on his direct responses to the questions asked, which the Adjudications Officer read from the I-485 form. At no point at the February 20, 2020 interview did the Adjudications Officer attempt to elicit more detailed responses from Mr. Jasso, nor

13

did she give his counsel the opportunity to ask such questions. Indeed, from the beginning of the interview she asserted that there was not time for a "full Q&A."

58.     In its March 23, 2020 decision, the Agency further states that the Agency contacted the San Luis, Arizona CBP point of entry (POE) office to ask an un-named "fraud officer" about Mr. Jasso's claim. Defendant does not give any other information about the call such as when it occurred. *See* Exhibit G.

59.     The Agency then states that Mr. Jasso's statements were not credible when compared to what the CBP "fraud officer" allegedly said in the call with USCIS. *See* Exhibit G.

60.     The Agency did not inform Mr. Jasso and his counsel of a call to CBP, of the fact that that the Agency allegedly obtained derogatory evidence from said call, or that the derogatory information from the call to CBP was made part of the record of proceedings.

61.     At no time did Mr. Jasso and his counsel have an opportunity to cross-examine the CBP "fraud officer" from San Luis, Arizona.

62.     The Agency set forth in its March 23, 2020 denial that Mr. Jasso's statements, when compared to the "procedural practices of U.S. Customs and Border Patrol after September 11, 2001," made his testimony devoid of credibility. *See* Exhibit G.

63.     The Agency did not provide Mr. Jasso and his counsel with a copy of the "CBP Procedural Practices after September 11, 2001," did not inform Mr. Jasso and his counsel that said derogatory information was made part of the record, and

did not give Mr. Jasso and his counsel an opportunity to contest or rebut such information. *See* Exhibit G.

64.     In its March 23, 2020 denial, the Agency makes no mention of the 2003 report by the GAO titled *Land Border Ports of Entry: Vulnerabilities and Inefficiencies in the Inspections Process*. Mr. Jasso filed this report, it is part of the record of proceedings, and it directly contradicts the inferences that the Agency made about the "CBP Procedural Practices after September 11, 2001." *See* Exhibit D and G.

65.     In its March 23, 2020 decision, the Agency makes no mention of the polygraph exam that Mr. Jasso submitted as evidence in support of his claim of a "wave through admission" in 2012. That examination detected no deception regarding Mr. Jasso's description of his "wave through admission" claim. *See* Exhibits C and G

## IX.     CAUSES OF ACTION

### A. Violation of the Administrative Procedure Act (APA § 706(2) et seq.)

66.     Mr. Jasso repeats, realleges, and incorporates the foregoing paragraphs as if fully set forth herein.

67.     Mr. Jasso has exhausted all administrative remedies available to him as of right and has no other judicial resource to judicial review other than by this action.

68.     Mr. Jasso has been aggrieved by agency action covered by the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., in that he was unlawfully

denied adjustment of status to that of a permanent resident of the United States as a result of the following Agency failings:

### 1. *Without Observance of Procedure as required by law 5 U.S.C. § 706(2)(D)*

69. "It is an abecedarian principle of administrative law that agencies must comply with their own regulations." *Manguriu v. Lynch*, 794 F.3d 119, 122 (1st Cir. 2015).

70. Here, the Agency failed to follow 8 C.F.R. § 103.2(b)(16)(i) and (ii) by not advising Mr. Jasso or his counsel of derogatory information obtained unilaterally by The Agency from a CBP "fraud officer," by not providing Mr. Jasso with an opportunity to review that information, and not allowing Mr. Jasso the opportunity to rebut said derogatory information before denying his I-485 application on March 23, 2020.

71. The Agency failed to follow 8 C.F.R. § 292.5(b) because it did not provide Mr. Jasso or his counsel with an opportunity to cross-examine the San Luis, Arizona POE CBP "fraud officer" whose "testimony" was injected into the record before denying Mr. Jasso's adjustment application.

72. The Agency failed to follow 8 C.F.R. § 103.2(b)(16)(i) and (ii) as it did not provide Mr. Jasso with the "CBP Procedural Practices after September 11, 2001," publication, nor with an opportunity to rebut such derogatory information, which the Agency used to discredit Mr. Jasso's credibility and deny his adjustment application.

16

73.    The Agency failed to follow 8 C.F.R. § 292.5(b) by impeding Mr. Jasso's counsel of record from objecting to questions or evidence during his February 20, 2020 examination taken for purposes of his adjustment of status application.

### 2. *Arbitrary and Capricious Denial under 5 U.S.C. § 706(2)(A)*

74.    A decision is "arbitrary and capricious if the agency has entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

75.    The Agency arbitrarily picked the evidence used to deny the requested benefit by only using derogatory evidence to attack Mr. Jasso's credibility while ignoring evidence in the record of proceedings that supported Mr. Jasso's claim of admission to the United States in the year 2006.

76.    The Agency failed to elicit adequate testimony from Mr. Jasso at his February 20, 2020 interview, creating an incomplete record.

77.    The Agency ignored relevant and probative evidence found in the record which supported Mr. Jasso's testimony, to wit the 2003 report by the GAO titled *Land Border Ports of Entry: Vulnerabilities and Inefficiencies in the Inspections Process*. The GAO report directly contradicts both the information obtained from the CBP "fraud officer" at the San Luis, Arizona POE, and the information in "Procedural Practices by CBP after September 11, 2001" that is cited in the denial of the I-485 application.

78.     The Agency ignored relevant and probative evidence in the record that supported Mr. Jasso's testimony, to wit the polygraph examination submitted in support of the 2012 application and that asserted that no deception was detected in Mr. Jasso's responses to questions regarding his claim of "inspection and admission" into the United States in 2006.

### 3.  The denial is contrary to law under 5 U.S.C. § 706(2)(A)

79.     The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be not in accordance with law. 5 U.S.C. § 706.

80.     The Agency misapplied the law in denying Mr. Jasso's application by requiring that he prove "lawful admission" into the United Sates instead of a "procedurally correct" admission. The first requires a substantive compliance with the law while the second only requires a procedurally correct inspection in order to be valid.

*81.*     The Agency misapplied the law by using the incorrect evidentiary standard required to determine "admission" in the context of adjustment of status proceedings. The Agency used the standard found in INA § 240(c)(2)(B) related to a charge of inadmissibility before an Immigration Judge in removal proceedings.  INA §240(c)(2)(B) requires a person in *removal proceedings* to establish by clear and convincing evidence that he is lawfully present after admission in section 240 proceedings. The correct standard for purposes of adjustment of status, including the element of "admission," is of preponderance of the evidence. *Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010) ("Except where a different standard is specified by law, a petitioner or applicant in administrative immigration

proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought.")  Mr. Jasso is not currently, and has never been, in removal proceedings.

### 4. *The credibility findings are not supported by substantial evidence as required by 5 U.S.C. § 706(2)(E).*

82.     An agency's credibility finding must withstand a substantial evidence test. "An adverse credibility finding must be supported by specific and cogent reasons. Those reasons must be substantial and bear a legitimate nexus to the finding of incredibility. Inconsistencies that are minor or that do not go to the heart of an applicant's claim[s] are insufficient by themselves to support an adverse credibility finding." *Morgan v. Mukasey*, 529 F.3d 1202, 1206 (9th Cir. 2008) (Internal citations omitted).

83.     A cursory review of the Agency's credibility determination reveals that it does not withstand a substantial evidence test. The Agency's finding was made without the complete record, and is supported by minor inconsistencies that are unrelated to the claim of admission, cherry picked, erroneous, and – on occasion – patently false.

**B.     Violation of Mr. Jasso's due process rights under the Fifth Amendment of the United States Constitution:**

84.     Mr. Jasso repeats, realleges, and incorporates paragraphs 1-64 as if fully set forth herein.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

85.    "Immigration proceedings, although not subject to the full range of constitutional protections, must conform to the Fifth Amendment's requirement of due process." *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1162 (9th Cir. 2005).

86.    "It is well-established that…due process for an immigrant threatened with deportation includes the right to a full and fair hearing." *Getachew v. I.N.S*, 25 F.3d 841, 845 (9th Cir. 1994).

87.    "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (internal quotation omitted).

88.    Mr. Jasso's only hearing in the adjudication of his 2017 application was neither full or fair, making it unlawful and exposing him to deportation from the United States. *See* 8 U.S.C. § 1227(a)(1)(A) (authorizing deportation of noncitizens found inadmissible at the time of adjustment of status), (B), (C)(i) (authorizing deportation of noncitizens who are "present in the United States in violation of" the INA or who have "failed to maintain the[ir] nonimmigrant status").

89.    Mr. Jasso was unable to examine or cross-examine witnesses who provided derogatory information attacking his credibility and claim of admission in 2006. This lack of due process exposes Mr. Jasso to deportation, which carries with it the loss of his liberty, the right to remain by his family and children in the United States, or the right obtain gainful employment.

# X. RELIEF REQUESTED

WHEREFORE Mr. Jasso requests that this Court grant the following relief:

A.  Declare the Agency's denial of Mr. Jasso's application to be unlawful and in violation of the Administrative Procedure Act;

B.  Declare that Mr. Jasso was "inspected and admitted" for purposes of INA §245(a);

C.  Order the Agency to immediately take any action by which Mr. Jasso's application for adjustment of status may be adjudicated;

D.  Grant attorneys' fees and costs pursuant 28 U.S.C. § 2412, 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d) and other authority; and

E.  Grant any other relief the Court deems appropriate and just.


RESPECTFULLY SUBMITTED on this 9th day of June, 2020.



By:   s/ Lara Erin Nations
Lara Erin Nations
Nations Law Group
2525 Blueberry Road, Suite 207
Anchorage, Alaska 99503
Telephone: 907-770-0909
Facsimile: 907-770-0902

Attorney for Juan Enrique Jasso Rodríguez